## UNITED STATES *v.* MANDEL (No. 297).[1]

COTTON CLOTH WITH SILK SELVAGE.

    Cotton cloth with selvage of silk, the selvage ordinary in kind and not designed to form a material and essential part of the goods as these might enter into consumption, was dutiable as cotton cloth under paragraph 306, tariff act of 1897.

### United States Court of Customs Appeals, January 25, 1911.

TRANSFERRED from United States Circuit Court for Northern District of Illinois, Eastern Division, G. A. 6733 (T. D. 28815).

[Affirmed.]

*D. Frank Lloyd,* Assistant Attorney General (*William K. Payne* on the brief), for the United States.

    *Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for the appellee.

Before MONTGOMERY, HUNT, SMITH, and BARBER, Judges.

SMITH, Judge, delivered the opinion of the court:

The collector of customs at the port of Chicago classified certain dress goods as composed of cotton and silk, with cotton as the component material of chief value, and assessed them for duty at 8 cents per square yard and 30 per cent ad valorem under the provisions of paragraph 311 of the tariff act of 1897, which reads as follows:

311. Cloth, *composed of cotton or other vegetable fiber and silk,* whether known as silk-striped sleeve linings, silk stripes, or otherwise, of which cotton is the component material of chief value, eight cents per square yard and thirty per centum ad valorem: *Provided,* That no such cloth shall pay a less rate of duty than fifty per centum ad valorem. Cotton cloth, filled or coated, three cents per square yard and twenty per centum ad valorem.

The importers protested that the merchandise was cotton cloth within the meaning of paragraph 310, which reads as follows:

310. The term cotton cloth, or cloth, wherever used in the paragraphs of this schedule, unless otherwise specially provided for, shall be held to include all woven fabrics of cotton in the piece or otherwise, whether figured, fancy, or plain, the warp and filling threads of which can be counted by unraveling or other practicable means.

and that it was therefore dutiable under the provisions of paragraph 306, the material parts of which are as follows:

306. * * * *Provided,* That on all cotton cloth exceeding one hundred and not exceeding one hundred and fifty threads to the square inch, counting the warp and filling, * * * dyed, colored, stained, painted, or printed, valued at over twelve and one-half cents per square yard, there shall be levied, collected, and paid a duty of thirty-five per centum ad valorem.

The Board of General Appraisers sustained the protest and the Government appealed to the United States Circuit Court for the Northern District of Illinois, eastern division, which appeal has been certified to this court, in conformity with the tariff act of August 5, 1909, for determination.

---

[1] Reported in T. D. 31259 (20 Treas. Dec., 189).

The deputy appraiser and the Government analyst in the appraiser's office report that the *body* of the goods is of cotton and that the *selvages* are of silk. The decision of the Board of General Appraisers is to the same effect, with the exception that it finds that the selvages are composed of both silk and cotton. The cloth is 42½ inches wide, inclusive of the selvages, which are one-half inch wide. The only issue presented by the appeal is whether the merchandise is *cotton cloth* or *cloth composed of cotton and silk* within the meaning of paragraph 311 of the tariff act of 1897. The Government, relying on the fact that the selvage or part of it is of silk, contends that the fabric is composed of *cotton and silk*, and therefore dutiable as assessed by the collector. The importer, on the other hand, insists that as the body of the fabric is entirely of cotton, it should have been classified as a cotton cloth under "the countable provisions" of Schedule I of the act.

In general, the selvage of textile goods is a mere incident of their manufacture, and is not designed to give character to the fabric or to form a material or essential part of the woven article when utilized by the consumer. Its primary distinctive purpose is to prevent the distortion of the cloth and the raveling out or fraying of the weft. Sometimes it also conserves the object, especially in pile fabrics, of overcoming during weaving the tendency of the filling threads to draw the edges of the web unduly toward the center. When textiles are thrown into consumption the ordinary selvage has no use and when garments or other articles are made up from them it is either discarded entirely or concealed from view in a convenient seam. Of course a selvage might be made of such a width and such a design as to be an ornamental feature of the fabric or an essential, material, or substantial part of it *when used or made up*, in which case it would be something more than a selvage. That is not this case, however.

The Board of General Appraisers finds that the mixture of silk in the selvage is for the purposes of a selvage, and an inspection of the goods discloses that the selvage itself gives no distinctive character to the cloth, has no value, and serves no useful end other than that of the ordinary selvage. Under the circumstances we would hardly be justified in holding that goods the *body* of which is *wholly of cotton*—goods which are evidently salable only as cottons—should be classified as *silk and cotton* fabrics by reason of a mere protection to the goods not designed to form a feature or a material, essential, or substantial part of them when put to actual use.

In no case cited by the Government was it held by the Board of General Appraisers or by the courts that the ordinary selvage was a factor to be considered in determining the true nature of the fabric— that is to say, the materials of which it is made. The cases of Openheym (T. D. 11580); O'Neill & Quackenbush (T. D. 12343); Megros (T. D. 12350); Kaempfer (T. D 14696); W. & J. Sloane (T. D. 25384);

Vantine (T. D. 23470); Vantine, Abstract 3288 (T. D. 26041); Agop Aleon (T. D. 26187); Fritz & La Rue (T. D. 25878); Megros. *v.* United States (53 Fed. Rep., 244), and Fritz *v.* United States (135 Fed. Rep., 916) decided nothing more than that the selvage should pay the duty imposed on the rest of the fabric and that it should be weighed or measured with the goods of which it formed a part for the purpose of ascertaining the full amount of duty to be paid. They did not decide that the ordinary selvage is a factor to be considered in ascertaining whether a fabric is truly one of *silk and cotton* or one of *cotton* only.

The cases of Seeberger *v.* Farwell (139 U. S., 608) and Magone *v.* Luckemeyer (139 U. S., 612) held that where the *body* of the goods was composed of mixed materials they should be classified as goods of mixed materials. Neither of them referred to the selvage as an element or held that it should be considered in reaching a decision as to the proper classification of the merchandise. The case of the United States *v.* Altman (107 Fed. Rep., 15) decided that a corset edged with cotton lace was an article of wearing apparel made "wholly or in part of lace." In that case the trimming and ornamentation of the corsets with lace was a "significant feature of these goods contributing materially to their appearance, and doubtless to their salability and price." Whatever its quantity or value, the lace seems, therefore, to have been a material part of the corset and was designed and intended to continue in that relation to it when used by the consumer.

From the brief of appellant it appears that in Hammond *v.* United States (1 Estee's Hawaiian Repts., 344), it was held that rawhide shoes of which a small percentage of iron was a component part were articles composed "wholly or in part of iron." We have not been able to examine this case, but we think we are safe in inferring that the iron was a material part of the shoe, not a mere incident of its manufacture, and that either as an ornament or for some practical purpose the iron formed and was intended to form a part of the shoe when the latter was thrown into consumption. Rothschild *v.* United States (179 U. S., 463) held that the admission of a bale of tobacco containing 15 per cent of wrapper tobacco was open to criticism as violative of a statute in force which provided in clear and definite words that the effect of *mixing any portion of wrapper tobacco with a filler tobacco in an importation was to make the entire quantity dutiable as wrapper.* Evidently there is nothing in this case or in the other cases cited from which it can be deduced, either directly or on principle, that an ordinary selvage, having no use beyond that of a mere selvage and not designed or intended to be a feature of the goods, or to form a material, substantial, or essential part of them in actual consumption, should determine the classification of the whole fabric.

The decision of the Board of General Appraisers is *affirmed.*

DE VRIES, Judge, having participated in the decision of the board, did not sit.