UNITED STATES v. AUFFMORDT & Co. (No. 773).[1]

FANCY COTTON GOODS WITH SELVAGES CONTAINING MERCERIZED THREADS.

There were mercerized threads in the selvage but not in the body of the cloth. The selvage is a part of the fabric only in the sense of being attached to it; it has none of the uses or purposes of the textile to which it is woven. It is, accordingly, a distinct entity and can not be taken to fix the classification of the textile itself.—United States v. Mandel (1 Ct. Cust. Appls., 223; T. D. 31259).

United States Court of Customs Appeals, May 17, 1912.

APPEAL from Board of United States General Appraisers, Abstract 26639 (T. D. 31883).

[Affirmed.]

*William L. Wemple*, Assistant Attorney General (*Thomas J. Doherty*, special attorney, of counsel; *Martin T. Baldwin*, special attorney, on the brief), for the United States.
*Brown & Gerry* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Fancy cotton dress goods, the selvages of which contained mercerized threads, were classified by the collector of customs as cotton cloth, mercerized. Consequently, in addition to the appropriate rate for cotton goods having the weight, value, count of threads, and color effects of the importation, a duty of 1 cent per square yard was imposed on the merchandise under the provisions of paragraphs

---

[1] Reported in T. D. 32561 (22 Treas. Dec., 908).

323 and 320 of the tariff act of 1909, which paragraphs, in so far as material to this case, read as follows:

323. In addition to the duty or duties imposed upon cotton cloth by the various provisions of this section, there shall be paid the following cumulative duties, the intent of this paragraph being to add such duty or duties to those to which the cotton cloth would be liable if the provisions of this paragraph did not exist, namely: * * * on all cotton cloth mercerized or subjected to any similar process, one cent per square yard.

320. * * * The terms bleached, dyed, colored, stained, mercerized, painted, or printed, wherever applied to cotton cloth in this schedule, shall be taken to mean respectively all cotton cloth which either wholly or in part has been subjected to any of these processes, or which has any bleached, dyed, colored, stained, mercerized, painted, or printed threads in or upon any part of the fabric.

The importers protested that the merchandise was not cotton cloth, mercerized, and that therefore it should not have been subjected to the additional duty. The Board of General Appraisers sustained the protest and the Government appealed. As the merchandise, with the exception of the selvage, contains no mercerized threads, the appeal raises but one question, and that is, Do the mercerized threads of the selvage determine the classification of the importation, notwithstanding the fact that none of such threads are found in the body of the goods?

In the case of United States *v.* Mandel (1 Ct. Cust. Appls., 223; T. D. 31259) we had occasion to pass on a controversy very similar to that now pending, and we there held that a cloth the body of which was cotton and the selvages cotton and silk was not "cloth composed of cotton * * * and silk" within the meaning of paragraph 311 of the tariff act of 1897. What we then said we say now. A selvage, which is that and nothing more, is merely incidental to the manufacture of the textile and is not designed to give character to the product; neither is it intended to form a material or essential part of the fabric when utilized by the final consumer. A true selvage prevents the fraying of the weft and the distortion of the cloth to which it is attached, and to that extent it serves a useful, not to say a necessary purpose; but it is no more a factor in determining the real nature, kind, quality, or character of the textile than is the tape wound about a bolt of the goods to keep them in place. If a few mercerized threads in the selvage of a fabric, the body of which is all of cotton, were enough to give the goods the character of a cotton cloth in part mercerized, then, by the same token a textile the body of which was wholly of silk would become a cloth of cotton and silk simply because it had a selvage in part of cotton.

The selvage is so incidental to the woven cloth that it is not available for use as material when the goods are made up, and it is a matter of common knowledge that dealers and consumers alike take no account of the selvage in determining the real nature of a cloth fabric. With them the body of the cloth decides its true character. Of

course it was in the power of Congress to ignore common usage and to give to a cloth the body of which was wholly of cotton the status of a mercerized fabric solely because mercerized cotton threads had been woven into the selvage. In the absence of a clear expression to that effect, however, we are not disposed to believe that Congress intended any such result to follow its enactment of paragraphs 320 and 323 of the existing tariff law. That part of paragraph 321 of the present tariff act imposing a duty on cloth composed of cotton and silk is a substantial reenactment of paragraph 311 of the tariff act of 1897, which in the Mandel case (T. D. 28815) was held by the Board of General Appraisers not to cover a cloth with a body of cotton and a selvage in part of silk. Inasmuch as the Mandel case was pending on appeal when the tariff act of 1909 was passed, it may be that the reenactment of paragraph 311 can not properly be considered as a legislative approval of the interpretation put upon it by the board. If, however, the reenactment can not be considered as a legislative approval of the Mandel case, neither can it be argued that the language of paragraph 320 of the new act was intended to meet the rule there established. Knowing, as it did, that the board had decided that the selvage could not be considered as a factor in determining the classification of the cloth provided for in paragraph 311, the natural and logical thing for Congress to have done, if it disagreed with the conclusion reached, was to have amended not paragraph 310 but the paragraph which the board construed.

It is argued by counsel for the Government that the language of paragraph 320 of the tariff act of 1909 is not only more specific than that of paragraph 311 of the tariff act of 1897 but that it is so specific that from it there is no escape save the theory that the selvage is not a part of the fabric. The provision of paragraph 320 that—

The terms * * * mercerized, * * * or printed, wherever applied to cotton cloth in this schedule, shall be taken to mean respectively all cotton cloth which either wholly or in part has been subjected to any of these processes, or which has any * * * mercerized, * * * or printed threads in or upon any part of the fabric—

is definite and specific, but it is no more indicative of a legislative intent that the selvages must be considered in determining the classification of the woven goods there mentioned than is the language of paragraph 311 of the tariff act of 1897, viz, "cloth composed of cotton * * * and silk." The selvage bears the same relation to the "fabric" of paragraph 320 that it does to the "cloth" of paragraph 311, and if it be a part of the "fabric," the same process of reasoning which makes it so will make it a part of the "cloth." The fact of the matter is that the selvage, strictly speaking, is not a part of a cloth abric at all. Its real usefulness ends when that of the fabric begins. The selvage is merely a protection to the fabric, and when the latter reaches the hands of the final consumer the

mission of the former is terminated. The selvage is therefore a part of the fabric only in the sense that it is attached to the fabric. As it has none of the uses or purposes of the textile to which it is woven it is really a distinct entity altogether and consequently can not be considered as a part of the fabric in the true acceptation of the term.

The decision of the Board of General Appraisers is *affirmed.*