HEYLIGER & RAUBITSCHEK *v.* UNITED STATES (No. 2086).[1]

1. CONSTRUCTION, PARAGRAPH 252, TARIFF ACT OF 1913—"COLORED."

   To bring cloth within the designation "colored" (par. 252, act of 1913), it is not necessary that the color should improve the appearance or add to the market value of the cloth or be permanent.

2. "FUGITIVE TINT" IN CLOTH.

   Cotton cloth was woven with a double twisted yarn for the warp and a single twisted yarn for the filling. The warp yarn, before weaving, had been treated with a "fugitive tint," solely for the purpose of assisting the weaver to distinguish the two yarns. This tint imparted a plainly discernible color to a substantial portion of the surface. Notwithstanding that this color is bleached out before the cloth is used, and notwithstanding that it adds nothing to the appearance or market value of the cloth, the importation is "colored" under paragraph 252, tariff act of 1913.

———————

[1] T. D. 38735.

3. CONDITION AT IMPORTATION GOVERNS CLASSIFICATION.

Goods are classified with reference to their condition *at the time of importation.*

..United States Court of Customs Appeals, May 23, 1921.

Appeal from Board of United States General Appraisers, Abstract 44082.

[Affirmed.]

*Allan R. Brown* for appellants.

*Bert Hanson,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of counsel), for the United States.

[Oral argument May 3, 1921, by Mr. Brown and Mr. Baldwin.]

Before SMITH, BARBER, and MARTIN, Judges; DE VRIES, Judge, participating in the decision by agreement of counsel.

MARTIN, Judge, delivered the opinion of the court:

The merchandise is cotton cloth and the sole issue in the case is whether the cloth is "colored" or not.

It is conceded that the average number of yarns exceeds 59 and does not exceed 79, and that the cloth is dutiable under paragraph 252 of the tariff act of 1913, at the rate of 25 per cent ad valorem if colored, or at 22½ per cent ad valorem if not colored.

The appraiser described it as "colored cotton cloth," and accordingly returned it for duty at 25 per cent ad valorem. That rate of duty was thereupon assessed by the collector.

The importers protested claiming that the cloth was not colored, and that accordingly it should be assessed with duty at only 22½ per cent ad valorem.

The Board of General Appraisers overruled the protest, and the importers now appeal.

It may be observed at this point that no attempt was made at the trial to prove a commercial designation, and therefore of course the common or ordinary signification of the terms in question must prevail in this decision.

It is said by the importers that the cloth when imported is partially tinted, the tint, they say, having been "applied very unevenly, giving an unpleasant streaky appearance to the fabric." In explanation of this condition the importers say that the cloth was woven with a double twisted yarn for the warp, and a single yarn for the filling; that the warp yarn, before the weaving, was treated with a "fugitive tint" solely for the purpose of assisting the weaver in distinguishing between the two yarns in the process of weaving; that the tint thus given to the warp yarn is merely temporary and disappears entirely in the process of bleaching or dyeing the cloth, likewise if the cloth be washed in soap and water, or even if it be exposed to the rays of the sun for a few days; and that the tint in question adds absolutely nothing to the market value or final usefulness of the cloth, nor is it intended to, since it is invariably removed before the cloth is put to

any use by the final consumer. They claimed thereupon that a fugitive tint of such character, even if visible in the cloth at the time of importation, should not have the effect of making "colored cloth" of a fabric otherwise conceddedly not colored.

The importers submitted testimony to the board tending to sustain these allegations, and they now ask a reversal of the board's decision.

An official sample of the imported cloth is attached to the record as Exhibit 2, and an inspection of this tends the more clearly to define and restrict the issue. For upon inspection it may be seen that narrow orange-colored stripes run across the fabric at more or less regular intervals and that these are so distinctly visible as to impart a plainly discernible color to the cloth as an entirety. It is true that the colored lines or stripes are irregular in form, and that the color does not cover the entire surface of the fabric, nevertheless it covers quite a substantial part thereof, and being woven in the body of the cloth as it is, it is palpably an incident or characteristic thereof. And indeed it can not be doubted that, if the color which is now in the fabric were durable and permanent in character and capable of wear, even though presenting the same appearance, it would certainly bring the article within the enumeration of colored cloth. And this statement finds no contradiction in the fact that the color would not improve the appearance of the article in common judgment, and would not add to the market value thereof.

In Davison v. United States (2 Ct. Cust. Appls., 78, 79; T. D. 31631) this court said:

The word "colored" is a participial adjective used frequently and even generally with the meaning of "having a color." The dictionaries sustain this statement. Such a definition of the word is almost invariably the first one given by such authorities. And the origin of the color or the method of its production in the article does not enter into the essential meaning of the term, which taken alone simply describes an existing quality or condition. In general speech, too, if an article has a color it is called colored.

We therefore conclude that at the time of importation the cloth in question was actually colored cloth within the common acceptation of the term, and the only question which remains is whether its assessment as such should be reversed because of the explanations above set out concerning the manufacturer's object in coloring the warp yarns as aforesaid, and the temporary and incidental character and purpose of the color as part of the fabric.

This question we think must be answered in the negative; for the collector was bound to ascertain the condition of the cloth in respect to color by inspection at the time of its importation and to classify it in this particular according to its characteristics at that time, and since it was then colored its assessment as colored cloth was correct,

notwithstanding the fact that the color was not permanent and did not add to the market value of the article. The tariff provision in question prescribes but a single criterion in this particular, and that is whether the cloth is colored or not at the time of its importation. If so, it becomes dutiable as colored cloth, regardless of the means or motive with which it was colored, or the subsequent history of the article as intended by the importers.

The principle upon which the foregoing conclusion rests has been exemplified and sustained in many cases. An unusual and interesting one is that of United States *v.* Levitt (26 Fed. Cas., 919), arising under the tariff act of 1832, in which, however, the Government was the complainant. Under that act "lead in pigs, bars, and sheets" was dutiable at 3 cents a pound, whereas "all busts of marble, metal or plaster" were free of duty. The importation in the case consisted of 664,000 pounds of lead cast into busts, for which the importer claimed free entry. The Government contended that the actual importation was lead, and that its form in the shape of busts was only temporary and designed to be evasive of the law. Nevertheless it was held that the busts were entitled in any event to free entry under the act. It may be interesting to note that Daniel Webster was counsel for the importer, and even more interesting that, according to the reporter, "Davis, district judge, addressed the jury in a most able and impartial charge, in the course of which he alluded to a former decision in relation to sugar. The duty on loaf sugar, he said, had been fixed at a very high rate, but was eluded in many cases by the introduction of an article in a pounded state. The Government claimed the duty, but the court notwithstanding the pounded sugar was superior to the best American loaf sugar that could be obtained, decided that it was not loaf sugar, and therefore not subject to duty."

Among other authorities see Merritt *v.* Welsh (104 U. S., 694); Frankenberg *v.* United States (206 U. S., 224); United States *v.* Citreon (223 U. S., 407); American Sugar Refining Co. *v.* United States (181 U. S., 610); Minneapolis Cold Storage Co. *v.* United States (9 Ct. Cust. Appls., 225; T. D. 38200); United States *v.* Hannevig (10 Ct. Cust. Appls. 124; T. D. 38384).

Nor do we think that our present decision is inconsistent with that in Texas & Pacific Railway Co. *v.* United States (7 Ct. Cust. Appls. 328; T. D. 36875). In that case certain fully manufactured fabrics were stenciled with the consignee's name apparently for purposes of identification in transportation only. It was held that this treatment did not bring them within the classification of "printed" fabrics. In the present case, however, it must be remembered that the color in question was imparted to the constituent warp yarns of which the cloth was in part composed and was thus woven into the essential fabric itself. And this is none the less true even though

it was intended that the color should afterwards be removed before the goods were put to their final use.

We think furthermore that the present case is distinguishable from those of United States *v.* Bryant & Beinecke (10 Ct. Cust. Appls. 79; T. D. 38355); United States *v.* Mandel (1 Ct. Cust. Appls. 223; T. D. 31259); and United States *v.* Auffmordt & Co. (3 Ct. Cust. Appls. 236; T. D. 32561), wherein certain threads woven into the selvage of goods, or a foreign thread imposed upon certain fabrics for use as a sewing guide only were held not to be determinative of the classifications then in question. It need hardly be observed again that the color now in question runs uniformly through the body of the present fabric.

In accordance with the foregoing views the decision of the board is *affirmed.*