UNITED STATES *v* N. ERLANGER, BLUMGART & CO., INC. (No. 3079) [1]

United States Court of Customs Appeals, January 9, 1929

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell*, special
  attorney, of counsel), for the United States.
*Curie, Lane & Wallace* (*Thomas M. Lane* of counsel) for appellee.

[Oral argument October 2, 1928, by Mr. Lawrence and Mr. Lane]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The issue in this case involves the proper construction and applica-
tion to be given to paragraphs 903 and 904 of the Tariff Act of 1922,
the pertinent portions of which read as follows:

PAR. 903. * * * Cotton cloth, printed, dyed, colored, * * * con-
taining yarns the average number of which does not exceed number 40, fifty-five
one-hundredths of 1 cent per average number per pound; * * *: *Provided further*,
That when not less than 40 per centum of the cloth is printed, dyed, or colored

---

[1] T. D. 43189.

with vat dyes, there shall be paid a duty of 4 per centum ad valorem in addition to the above duties. * * *

PAR. 904. * * * In the ascertainment of the condition of the cloth or yarn upon which the duties imposed upon cotton cloth are made to depend, the entire fabric and all parts thereof shall be included. * * *

The merchandise involved consists of cotton cloth printed with vat dyes on one side with a design covering 50 per centum of the surface of one side. Its assessment for duty under the proper portion of the first part of paragraph 903 is not questioned here, but in addition to the assessment of duty, in accordance with the yarn count under said paragraph 903, an additional 4 per centum ad valorem duty was assessed upon the theory that 40 per centum of the cloth was printed with vat dyes.

The importer protested the levying of the additional 4 per centum duty. The court below sustained the protest, and the Government has appealed to this court.

There are two exhibits in the case, 1 and 2. They are both admitted to be "casement cloths," and are chiefly used for window hangings. Exhibit 2 is marked and described as "simplex" and is printed on one side only, while Exhibit 1 is marked "duplex" and is printed on both sides in such manner that the design on each side exactly coincides and is exactly opposite the design on the other side. While Exhibit 1 is an official sample from the same shipment as Exhibit 2, it is conceded that it was properly assessed with duty. It happens, in the case at bar, that the printed design is of such form and shape that the portion printed blue is in the same size and form as the unprinted portion, which remains white. Exhibit 1 is printed on both sides simultaneously, being passed through a set of rollers containing the plates which are identical and which exactly coincide. Evidently the cloths in both exhibits, before printing, were identical. The plain or unprinted side of Exhibit 2 shows, in faint outline, the figures which are printed on the opposite side of the cloth. The testimony shows that Exhibit 2 and Exhibit 1 are used for the same purpose, but that in the use of Exhibit 2 the plain side is hidden or is covered with a lining.

The decision of this case involves the sole question: What did Congress mean by the use of the phrase in paragraph 903 "when not less than 40 per centum of the cloth is printed, dyed, or colored with vat dyes," when considered with the quoted part of paragraph 904?

The Government contends that it means 40 per centum of the surface of one side, when applied to Exhibit 2, while the importer contends that the quoted provision of paragraph 904 requires that the printed side and the so-called blank side shall both be taken into consideration. If the Government's contention is correct, it is admitted that 50 per centum of Exhibit 2 is printed, and if the importer is right, only 25 per centum of same is printed.

It has been suggested that the quoted provision of paragraph 904, requiring that all parts of the cloth shall be included in the ascertainment of its dutiable condition, has no application to the quoted proviso of paragraph 903, in so far as the proviso itself provides the rule, in definite terms, for the ascertainment of the condition of the cloth. We are not prepared to hold that the definite and specific mandate contained in paragraph 904 does not apply to the ascertainment of the condition of the cloth as involved in the determination of the issue before us, and we must, therefore, in ascertaining the printed condition of the importation at bar, and in trying to arrive at the intention of Congress, give full force and effect to paragraph 904.

At the trial in the court below, the Government offered to prove, over the objection of the importer, that not more than 5 per centum of the printed cloth imported was printed on both sides, like Exhibit 1, marked "duplex." The court declined to admit the testimony. It would seem to us that the language used by Congress in paragraph 903 is sufficiently ambiguous to call for explanatory proof, and a very wide latitude should have been permitted for the purpose of enabling the court to arrive at the intent of Congress.

The Government has assigned as error the action of the court in rejecting the proffered proof and, before this court, argues that if only 5 per centum of imported cotton cloth was printed on both sides, the classification directed by the court below in the case at bar would result in 95 per centum of imported printed cotton cloth escaping the 4 per centum additional duty, and that Congress could not have contemplated such a result. While the form of the questions may not be technically correct, we think that proof of this character was admissible and, if properly made, should have been given weight and consideration by the court below in trying to arrive at the intention of the legislative body. Under the circumstances, however, we do not regard the action of the court below as reversible error, since the admission of proof of this character, if a new trial was granted, would not change our views on the proper interpretation to be given to the paragraph, as is found hereinafter.

The Government urges that if it is wrong in its contention that Exhibit 2 is 40 per centum "printed" with vat dyes, it is, nevertheless, 40 per centum "colored" with vat dyes. It has cited a number of authorities and devoted considerable time in argument and space in brief in an attempt to support its contentions in this regard. The gist of its argument is to the effect that if both sides or both surfaces are counted, one side being printed and colored, and the other side, since the printing "shows through," being colored, the cloth is, therefore, 50 per centum colored. We see no merit in this contention. Both exhibits are, admittedly, "printed." Congress distinguished between printing and coloring, and we find it unnecessary to discuss

this question and will confine our efforts to the ascertainment of the "printed" condition of the cloth as affects the issue involved.

It was conceded in argument here, and the printed authorities on textile printing abundantly support the concession, that long before the Tariff Act of 1922 went into effect, cotton cloth was printed in the identical manner and with the identical processes with which the cloths at bar were printed, and that on and prior to the passage of the Tariff Act of 1922, cotton cloth printed with vat dyes on both sides, similar to the cotton cloth represented by Exhibit 1, was an article of commerce. See Textile Printing, Encyclopædia Britannica. Congress must have had in contemplation the importation of cotton cloth printed on both sides with vat dyes and also cotton cloth printed on one side only. When it enacted paragraph 904 and provided that "In the ascertainment of the condition of the cloth or yarn upon which the duties imposed upon cotton cloth are made to depend, the entire fabric and all parts thereof shall be included," it must have known that if both sides of the cloth were taken into consideration in determining the amount of surface to figure into the calculation, most printed cloth, printed on one side only with vat dyes, would not be subjected to the 4 per centum additional duty. It is hardly supposable, in view of the history and extrinsic circumstances surrounding the enactment of that paragraph, that Congress could have intended such a result.

The proviso for the 4 per centum additional duty is first found in the Senate Confidential Committee Print. No mention of it was made in any of the House proceedings as far as we can ascertain. The hearings before the Senate committee (see General Tariff Revision Hearings, Senate, Vol. V, p. 3385) would indicate that there was a demand for a compensatory duty on account of the dyestuffs that went into the fabric and that there was a necessity for this duty on account of the then manifest intention of Congress to protect, in other schedules, the dye industry. It was further pointed out to the Senate committee that if a compensatory duty was not placed upon the dye in the cloth, the dyed or printed cloth would be imported instead of the dye, which would necessarily greatly increase the amount of imported cloth. While this is not to be regarded as an indication as to what Congress meant by its enactment of the provision, it nevertheless may throw some light upon the statement of the chairman of the Finance Committee who introduced the provision on the floor of the Senate. We find in Congressional Record (Vol. 62, Pt. 10, p. 10325) the following:

Mr. SMOOT. The dyes falling in paragraph 26 are acid dyes, and there are the direct cotton dyes, and there are the vat dyes. I tried to tell the Senate the other day that there is an immense difference in the method of putting the dyes upon the cloth, but we do not want them to have a 4 per centum duty if they are other

.dyes than vat dyes. We do not impose it because of the fact that the duties provided will take care of it. What we want to come into the country is a dye that has to be put upon the cloth through the dye-vat process, none other. Therefore we limit it to that kind of a dye and that kind of a process.

Mr. SMITH. But you have the same duty on all the dyes in paragraph 26.

Mr. SMOOT. But we are not giving a compensatory duty in this item for that purpose. That is only upon the cloths which shall be dyed by the vat-dye process.

Mr. SMITH. I am looking for information. My attention was not called to this until the Senator from Montana raised the question as to why that particular process of dyeing was selected and was given an advantage over the others when they all bear the same rate of duty.

Mr. SMOOT. The vat-dye process is the most expensive process of dyeing. You can dye with all the other dyes which fall in paragraph 26, *and in comparison with the vat-dye process I do not think they would cost more than one-tenth in labor as compared with vat dyeing. That is the reason for the difference.* (Italics not quoted.)

We think the remarks of the Senate Finance Committee chairman as to the reason for putting into the paragraph the provision under consideration are pertinent and proper for our consideration in trying to determine what Congress meant by the same. A consideration of the best authorities available, and they are not abundant, on the subject of the application of a vat dye in a cotton-cloth printing operation would seem to sustain the view expressed by the chairman of the Senate Finance Committee that the printing of cotton cloth with a vat dye entails enormously more work than the same printing operation with any other kind of dye. See O'Neill, Chemistry of Calico Printing; Practice and Principles of Calico Printing; Crookes, A Practical Handbook of Dyeing and Calico Printing; and the article on textile printing in the Encyclopædia Britannica.

It becomes at once apparent that the legislature was anxious to protect the vat-dye cloth-printing industry and, to an extent, measure that protection by the amount of work or labor necessarily expended in the process. Regardless of whether it was the dye industry or the cloth-printing industry which Congress desired to protect, it would lead us to an anomalous result to hold, in this case, in view of the foregoing considerations, that Congress sought only a compensatory duty, which, in its effect, covered little more than cloth printed on both sides. For the sake of argument let us assume that it is true that a very large proportion of imported printed cotton cloth is printed only on one side. Is it reasonable to assume that Congress did not want to protect the labor involved in such printing?

It seems to us that the crux of the situation rests upon the proposition that Congress, in the enactment of paragraphs 903 and 904, had in mind that the determination of the condition of printed cloth involved only a consideration of the printed surface of the same, in so far as printing is a surface operation. As applicable to the para-

graphs of the Tariff Act of 1922 under consideration, printing is defined by Funk & Wagnalls New Standard Dictionary as follows:

The act or process of reproducing a design upon a surface, as by making an impression from it on a suitable substance by any process.

It seems to us that it is immaterial as to how much dye was absorbed into the inner threads of the cloth, but the material thing is how much of the surface or surfaces of the same were printed. We do not believe, however, that Congress contemplated that the blank surface of the cloth should be counted in the ascertainment of how much of the cloth was printed, for the very good reason that the blank surface is not printed. Congress, therefore, had in mind two kinds of cloth: One printed on both sides, and the other printed on one side. If it was printed on both sides, of course, in the ascertainment of its printed condition, both sides should be counted, but if it was printed on one side only, the calculation should be confined to the side which was printed in ascertaining how much of the cloth was printed.

We think the application to be made of the phrase, "The entire fabric and all parts thereof shall be included," depends upon the nature of the particular ascertainment under consideration. If the dutiable status of the fabric depends on the thread count or the quality of certain threads or similar circumstances, then, of course, all threads and the entire fabric, inside and out, must be taken into consideration. But, "The entire fabric and all parts thereof," as applied to the test of how much of the cloth is "printed," a surface operation entirely, manifestly should in no way involve the consideration of things not in any manner related to the process of printing. "The entire fabric and all parts thereof," which is involved in the test at bar, is the entire printed surface of the same.

It follows that Exhibit 2, being 50 per centum printed on one side, and not being printed on the other, should bear the 4 per centum additional duty, and that importations like Exhibit 1, if more than 40 per centum of the surface is printed, when both surfaces are considered, should also bear the 4 per centum additional duty.

The judgment of the United States Customs Court is *reversed.*