A. BONIME *v.* UNITED STATES (No. 3848)[1]

United States Court of Customs and Patent Appeals, March 4, 1935

*Puckhafer & Rode (George J. Puckhafer* of counsel) for appellant.
*Joseph R. Jackson,* Assistant Attorney General *(Charles D. Lawrence,* Special Assistant to the Attorney General, and *William Whynman,* special attorney, of counsel), for the United States.

[Oral argument February 5, 1935, by Mr. Puckhafer and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Five entries of cotton cloth were made by the appellant at the port of New York under the Tariff Act of 1922. They were classified by the collector in each instance under paragraph 903 of said act, with an additional 10 per centum ad valorem under paragraph 906 of said act.

These entries were covered by three protests filed by the importer, in which protests it was claimed that the said goods were not chargeable with said additional duty of 10 per centum under said paragraph 906. An alternative claim was made to the effect that if said goods are dutiable under said paragraph 906, such duty was in addition to the appropriate primary rate as provided in the first or second subparagraphs of paragraph 903 of said act. However, as the issue is presented here, no contention is made under said alternative claim, and the single question is presented as to whether the additional duty of 10 per centum under said paragraph 906 is properly chargeable on these goods. There is no contention as to the correctness of the ascertainment of basic duty under said paragraph 903, and it will not, therefore, be necessary to quote the language of said paragraph here. Said paragraph 906 and paragraph 904 of said act are as follows:

PAR. 906. In addition to the duty or duties imposed upon cotton cloth in paragraph 903, there shall be paid the following duties, namely: On all cotton cloths woven with eight or more harnesses, or with Jacquard, lappet, or swivel attachments, 10 per centum ad valorem; on all cotton cloths, other than the foregoing, woven with drop boxes, 5 per centum ad valorem. In no case shall the duty or duties imposed upon cotton cloth in paragraphs 903, or 903 and 906 exceed 45 per centum ad valorem.

PAR. 904. The term cotton cloth, or cloth, wherever used in this schedule, unless otherwise specially provided for, shall be held to include all woven fabrics of cotton, in the piece, whether figured, fancy, or plain, arid shall not include any article, finished or unfinished, made from cotton cloth. In the ascertainment of the condition of the cloth or yarn upon which the duties imposed upon cotton cloth are made to depend, the entire fabric and all parts thereof shall be included.

The average number of the yarn in cotton cloth herein provided for shall be obtained by taking the length of the thread or yarn to be equal to the distance covered by it in the cloth in the condition as imported, except that all clipped threads shall be measured as if continuous; in counting the threads all ply yarns shall be separated into singles and the count taken of the total singles; the weight shall be taken after any excessive sizing is removed by boiling or other suitable process.

The various protests were consolidated for the purposes of trial.

Two witnesses were called and examined on behalf of the importer in the trial court, one of whom was an examiner and the other an analyst, at the port of New York.

It appears from the testimony of these witnesses that samples of the imported goods were analyzed by the witness Gassmann, and it was found on analysis that the goods were of a twill weave, with a selvage on each edge made with a taffeta weave. It further appears that in weaving the body of the cloth seven harnesses were used, and that in weaving the selvages two harnesses were used; that both selvage and the body of the cloth are woven at the same time, on the same loom; that the cloth is always woven with a selvage, and that it cannot be made without the same.

The trial court was of opinion that the protests of the appellant were without merit, and that the cloth in issue should be considered for dutiable purposes as woven with nine harnesses. It, therefore, entered judgment against the importer.

On the hearing in this court, and in the brief of counsel, it is admitted by the importer that protest No. 117908–G/32215, so far as it relates to the merchandise in entry No. 861131, should be overruled, it being conceded that the merchandise in question was fabricated with fourteen harnesses.

Counsel for importer contend here that the judgment of the court below ought to be reversed, principally on the authority of *United States* v. *Mandel*, 1 Ct. Cust. Appls. 223, T. D. 31259, and *United States* v. *Auffmordt & Co.*, 3 Ct. Cust. Appls. 236, T. D. 32561. The Government, on its part, insists that these cases are not decisive, and cites *United States* v. *Erlanger et al.*, 16 Ct. Cust. Appls. 437, T. D. 43189, which is claimed to be decisive.

*United States* v. *Mandel, supra,* was decided under the tariff act of July 24, 1897, and came to this court on transfer from the United States Circuit Court for the Northern District of Illinois. The imported merchandise in that case was a cotton fabric having silk selvages. The question was whether it was properly dutiable as

classified under paragraph 311 of said act as "cloth, composed of cotton or other vegetable fiber and silk," or as cotton cloth by count of threads under paragraph 306 of said act. This court there went into a considerable discussion of the nature and character of a selvage upon textile goods. We concluded that "its primary distinctive purpose is to prevent the distortion of the cloth and the raveling out or fraying of the weft." We further stated that when goods containing a selvage were thrown into consumption, ordinarily the selvage has no use. Again we stated:

In no case cited by the Government was it held by the Board of General Appraisers or by the courts that the ordinary selvage was a factor to be considered in determining the true nature of the fabric—that is to say, the materials of which it is made. * * *

And, finally, we said this:

* * * Evidently there is nothing in this case or in the other cases cited from which it can be deduced, either directly or on principle, that an ordinary selvage, having no use beyond that of a mere selvage and not designed or intended to be a feature of the goods, or to form a material, substantial, or essential part of them in actual consumption, should determine the classification of the whole fabric.

Judgment was rendered sustaining the protest of the importer.

*United States* v. *Auffmordt & Co.*, *supra*, was decided under the tariff act of August 5, 1909. In that case, paragraph 323 of said act provided that an additional duty upon countable cotton cloth should be made on all cotton cloth mercerized or subjected to any similar process. Cloth was imported which contained a mercerized selvage, and the goods were classified as mercerized, under said paragraph 323. Paragraph 320 of said act provided that the term "mercerized" should be taken to mean all cotton cloth which "either wholly or in part" has any mercerized "threads in or upon any part of the fabric." The issue was whether the cloth had been mercerized, under said paragraph 320. This court, again speaking through Smith, J., who had written the opinion of the court in the *Mandel* case, *supra*, discussed, extensively, the relationship of a selvage to the cloth to which it was attached, and said:

* * * A selvage, which is that and nothing more, is merely incidental to the manufacture of the textile and is not designed to give character to the product; neither is it intended to form a material or essential part of the fabric when utilized by the final consumer. A true selvage prevents the fraying of the weft and the distortion of the cloth to which it is attached, and to that extent it serves a useful; not to say a necessary purpose; but it is no more a factor in determining the real nature, kind, quality, or character of the textile than is the tape wound about a bolt of the goods to keep them in place. * * *

* * * * * * *

The selvage bears the same relation to the "fabric" of paragraph 320 that it does to the "cloth" of paragraph 311, and if it be a part of the "fabric," the same process of reasoning which makes it so will make it a part of the "cloth." The

fact of the matter is that the selvage, strictly speaking, is not a part of a cloth fabric at all. Its real usefulness ends when that of the fabric begins. The selvage is merely a protection to the fabric, and when the latter reaches the hands of the final consumer the mission of the former is terminated. The selvage is therefore a part of the fabric only in the sense that it is attached to the fabric. As it has none of the uses or purposes of the textile to which it is woven it is really a distinct entity altogether and consequently can not be considered as a part of the fabric in the true acceptation of the term.

Here was a distinct and unequivocal holding by this court, that, for dutiable purposes, the selvage could not be considered a part of the cloth at all.

Since this holding in 1912, two general revisions of the tariff laws of the country have been made, and, if it was desired to change these judicial constructions, ample opportunity was afforded to the Congress in the act of October 3, 1913, and in the Tariff Act of 1922, to make the necessary changes. During those years, so far as we are advised, no material changes in the acts have been made, and it is fair to assume under the general rule, that the Congress was advised of the views of this court, as expressed in these cases, and legislated in the light of such knowledge.

It is argued, however, by Government counsel, that there is a difference between the provisions of the dutiable paragraphs involved in the case at bar and those which were involved in the *Auffmordt* and *Mandel* cases, *supra*. It is said that the limitation in the present paragraph 906 is one imposed because of the method of making the cloth, and that, therefore, there is a distinction in this respect from the said former cases. We are unable to discern such distinction. If it is true, as stated by us, particularly in the *Auffmordt* case, *supra*, that the selvage is not a part of the cloth for dutiable purposes, then it is difficult to perceive why or how harnesses used in making the selvages are used in weaving the cloth. There is no showing here that there was any effort made on behalf of the Congress in enacting this provision to protect the particular methods or machines by which cotton cloths are made, in this provision. On the contrary, what legislative history there is, which has been called to our attention, demonstrates that this was not the object.

In the Summary of Tariff Information, prepared by the United States Tariff Commission for the use of the Senate Committee on Finance, and which was before the Congress when the Tariff Act of 1922 was being prepared and enacted, attention was called to the manufacture and importation of cotton cloths, particularly sateens. We quote the following excerpts from the report of the commission on the language which was afterwards incorporated into paragraphs 904, 905, and 906 of the Tariff Act of 1922.

\* \* \* Sateens are plain cloths made on ordinary cam looms using five or more harness; where there are a large number of threads to the inch the dobby-

head lift is substituted. Venetian linings are mainly sateens woven with eight or more harness and finished to resemble silk linings.

\* \* \* \* \* \* \*

Prior to the war 8-harness venetians were largely imported, but the demand is now mainly supplied by domestic mills.

\* \* \* \* \* \* \*

*Imports* of lappets, swivels, and sateens are not separately recorded It is known, however, that lappets constitute a minor item, whereas swivels and sateens are among the most important of the countable cotton cloth imports, although the importation of the latter, mainly 8-harness venetians, has declined before the increasing domestic competition. Venetians are almost entirely from England, whereas cotton swivels are mainly the products of hand looms in Switzerland and France.

\* \* \* \* \* \* \*

*Important changes in classification.*—Paragraph 905 provides special rates of duty, higher than those applying under the provisions of paragraph 903, to three special types of cotton cloths, viz, to lappets and swivels, to sateens woven with eight or more harness, and to tire fabrics.

\* \* \* \* \* \* \*

The second part of this paragraph, providing for a cumulative differential on sateens woven with eight or more harness, is an entirely new provision. It is intended particularly to cover venetians and grey goods to be finished into venetians. Venetians are dyed and mercerized and schreinered cloths of close texture, most of them being 8-harness sateens, which are used for various purposes, particularly for linings. Prior to the war cotton venetians were almost entirely imported and constituted the largest item in the list of countable cotton cloths. Their manufacture in this country developed during the war and is now substantial.

\* \* \* \* \* \* \*

*Suggested changes.*—The advisability of a special differential on sateens woven with eight or more harness is questionable. The manufacture of venetians is now firmly established, and it would seem that such cloths should be dutiable under paragraph 903 at whatever progressive rates are provided for other countable cotton cloths. Since venetians constitute one of the largest items of imported countable cotton cloths, the levying of additional duty would mean a substantial increase in the average rate of duty applicable to countable cotton cloths. It would also necessitate the examination of every sateen to determine whether it is made with eight or more harness, and this would add considerably to the work of customs examiners. This provision might well be omitted, with the intent that all cotton sateens fall under paragraph 903. (Summary of Tariff Information, 1921, pp. 864–866.)

The Ways and Means Committee of the House of Representatives, in speaking of the importations of cotton cloth said this, among other things:

A large portion of the importations consist of venetians, which are cotton sateens specially woven and to which there has been given an extra finish, resulting in a cloth which it is difficult to distinguish by the eye from satin. A cumulative duty has been given on this cloth in order to stimulate our manufacturers to produce it. (H. R. Report 248, part 1, 67th Cong., 1st Sess. p. 15.)

These various quoted excerpts show quite plainly that the object that was in the mind of the Congress, at the time of the enactment

of said paragraph 906, was to protect American producers of high grade sateens, or venetians as they are called, against importations from abroad, and thus to build up American industries in that regard. The object to be attained was not to be attained by imposing duty upon the number of harnesses used, but by additional duties upon the cloth which was so produced, it being known to Congress that the use of more than eight harnesses was necessary in the production of the particular kinds of cloth which were sought to be covered by the paragraph. It must follow that if the usable portion of the cloth, that is, the cloth less the selvage, was made by less than eight harnesses, it was not the kind of cloth the Congress had in mind, namely, the high grade sateens.

The Government contends that the cases hereinbefore reviewed are not applicable to the case at bar because the tariff acts under which they were decided did not contain the provision of paragraph 904, *supra*, viz—

* * * in the ascertainment of the condition of the cloth or yarn upon which the duties imposed upon cotton cloth are made to depend, the entire fabric and all parts thereof shall be included, * * *

and the Government relies upon the case of *United States* v. *Erlanger et al., supra,* as controlling the issue herein by virtue of said provision of paragraph 904.

In our opinion the words "condition of the cloth" do not refer to a selvage such as is here involved, and we find nothing in said last cited case which should lead us to a contrary conclusion. In that case we were considering how much of a cloth was printed, the imported cloth being printed on one side and plain upon the other. We said, in substance, construing the above quoted provision of paragraph 904, that the meaning of the phrase "the entire fabric and all parts thereof shall be included," depended upon the nature of the particular ascertainment under consideration, and held that in the case then under consideration it meant "the entire printed surface of the same." As we there determined that the dutiable character of the cloth depended upon the printed surface, so, in the case at bar, it is entirely in harmony with that conclusion to hold that the dutiable character of the imported merchandise depends upon the construction of that portion thereof which has been construed, in the *Mandel* and *Auffmordt cases, supra,* to constitute the entire cloth, or fabric, for dutiable purposes.

With respect to the other cases cited by counsel for the Government, we find nothing in any of them which is in conflict with the conclusion we have reached as above stated.

The judgment of the United States Customs Court is *reversed* as to all items except those covered by entry No. 861131 of protest No. 117908–G/32215, as to which entry the judgment is *affirmed.*

The cause is *remanded* for further proceedings in conformity with this opinion.

DISSENTING OPINION

GARRETT, Judge: I recognize the binding authority of the *Mandel* and *Auffmordt & Co.* cases, cited in the majority opinion, where the language of the statute and the facts are the same as were there involved, but those cases do not seem to me to be controlling here, nor do I make the same deduction from the legislative history as that made by the majority.

The record in this case is replete with uncontradicted testimony to the effect that the cloth at issue *could not have been woven* without weaving the selvage along with it, and that to weave the selvage two harnesses in addition to the seven used in weaving the actual body of the fabric were required.

Paragraph 906 of the Tariff Act of 1930 lays an additional duty upon cloth woven with more than seven harnesses. It amounts to a levy of duty upon the *manner of weaving*. It, therefore, seems to me that, since the cloth part cannot be woven without at the same time weaving the selvage part, the logical conclusion was reached by the trial court.