GODILLOT *v.* UNITED STATES (No. 185). REISS *v.* UNITED STATES (No. 186).[1]

MARASCHINO CHERRIES.

There is an acknowledged difficulty in determining the precise percentage of alcohol that is necessary to constitute a preservative of cherries in maraschino, when these are packed in hermetically sealed bottles or tins; but where alcohol in amounts from 3.10 per cent to 5.45 per cent appears to have been used, and the evidence showing that alcohol in such proportions retards fermentation when the fruit is exposed to air, it is held this amount serves a purpose in preserving the fruit for use; the fruit was so preserved in spirits and was dutiable under paragraph 263, tariff act of 1897.—United States *v.* Reiss (166 Fed. Rep., 746) distinguished.

United States Court of Customs Appeals, February 1, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, G. A. 6958 (T. D. 30222).

[Affirmed.]

*Comstock & Washburn* for appellants.

*D. Frank Lloyd,* Assistant Attorney General, for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The importation in these cases consisted of cherries in maraschino put up in a light sirup or in sugar containing various percentages of alcohol, and packed in hermetically sealed bottles or tins. The percentage of alcohol varies in the different importations from 3.10 per cent in one instance to 5.45 per cent in another, one sample containing 3.60 per cent and one 4.50 per cent.

The rate assessed by the collector was 1 cent per pound and 35 per cent ad valorem under paragraph 263 of the tariff act of 1897. The protestant claims that the importation should be assessed under paragraph 262 as fruits "prepared in any manner, not specially provided for in this act," at 2 cents per pound.

---

[1] Reported in T. D. 31275 (20 Treas. Dec., 233).

Paragraph 263 reads as follows:

Comfits, sweetmeats, and fruits preserved in sugar, molasses, spirits, or their own juices, not specially provided for in this act, one cent per pound and thirty-five per centum ad valorem; if containing over ten per centum of alcohol and not specially provided for in this act, thirty-five per centum ad valorem and in addition two dollars and fifty cents per proof gallon on the alcohol contained therein in excess of ten per centum. * * *

The question of what constitutes fruits preserved in spirits has been before the courts in two cases at least. The first case arose under the tariff act of 1894. Paragraph 218 of that act, which corresponds to paragraph 263 of the act of 1897, omitted the word "spirits," so that fruits preserved in spirits were not within its provisions. The case was Reiss & Brady v. United States (135 Fed. Rep., 248), and it appeared from the testimony of expert witnesses that the importations contained quantities of alcohol varying from 6.48 per cent to 8.57 per cent. There was also testimony by the importer that it contained 10 to 15 degrees of alcohol. It appeared that this alcohol could not have been produced by fermentation. The court said:

The tariff act of August 27, 1894, contains no provision for fruits preserved in spirits. A specific duty, however, is placed upon fruits preserved in sirup or sugar or in their juices. * * *

The omission of the words "or spirits" in paragraph 218 of the act of August 27, 1894, left the articles unprovided for, except, as already stated, under the general terms of section 3 of the act.

This case was on appeal affirmed by the court of appeals on the opinion of the circuit judge.

The words "or spirits" having been reincorporated into the act of 1897, the question again arose in United States v. Reiss & Brady (166 Fed. Rep., 746), in which case, as the record shows, the cherries were put up in hermetically sealed bottles, and the opinion states:

The sirup contains an insignificant quantity of alcohol and no juice. The evidence shows that the sealing and not the sirup is the preservative.

A reference to the record of the Reiss & Brady case shows that the analyses there discovered alcohol in the different samples varying from 0.70 per cent to 1.20 per cent. This, as indicated by the opinion, was treated as an insignificant quantity.

In the present brief the importers' counsel state that they have not appealed in any case where the percentage of alcohol exceeded 6 per cent. It is difficult to assign any reason why this per cent should be given as the dividing line. It is to be noted that the paragraph quoted (263), by very plain implication, makes dutiable fruits preserved in spirits in which a less percentage than 10 per cent of alcohol is present. This might perhaps properly have been treated as the

dividing line and is so treated by paragraph 274 of the present tariff act of August 5, 1909, which contains the following:

* * * comfits, sweetmeats, and fruits of all kinds preserved or packed in sugar, or having sugar added thereto, or preserved or packed in molasses, spirits, or their own juices, if containing no alcohol, or containing not over ten per centum of alcohol, one cent per pound and thirty-five per centum ad valorem; if containing over ten per centum of alcohol and not specially provided for in this section, thirty-five per centum ad valorem and in addition two dollars and fifty cents per proof gallon on the alcohol contained therein in excess of ten per centum. * * *

We are bound to construe paragraph 263 of the tariff act of 1897 as evidencing a purpose to impose a tariff upon fruits preserved in spirits containing less than 10 per cent of alcohol. This being so, and it appearing that in order to preserve fruits indefinitely without being sealed it should contain from 14 to 16 per cent of alcohol, it becomes our duty to ascertain what is meant by the term "preserved" as used in the section. The evidence in this case clearly shows that a much less percentage would retard fermentation when exposed to the air, and that this would be true of a percentage as low as 3 per cent. It is significant that in the trial of a former case a witness, a member of the firm of Reiss & Brady, testified that in the year 1906 they directed their goods to be put up with 5 per cent of alcohol, and further testified as follows:

Q. What is that alcohol put in there for?—A. That is put in because they found lately we find it is necessary, because they are used mostly for bar purposes, and the barkeeper opens it and he has been kicking that the goods spoil too quick.

Q. What is the function discharged by this alcohol, intended to be subserved by it, in putting it in? Is it to preserve the article?—A. Preserve the article? No. It is after it gets open it will preserve it better, but not as far as preserving itself is concerned.

Q. What is the purpose of putting the alcohol in the cherries at all?—A. When it gets open, after the bottle has been opened, the fruit will keep in better condition when containing this amount of alcohol than it will without.

*        *        *        *        *        *        *

Q. Would 5 per cent operate now to preserve them?—A. After the bottle has been opened?

Q. After the bottle has been opened.—A. It seems so.

It can not be said therefore of alcohol present to the extent of 5 per cent of the importation that it is an insignificant quantity. It answers a purpose, and a material purpose, in preserving the fruits for a sufficient length of time to enable the purchaser to make use of them, which would not be true if the alcohol were not present.

It is most difficult to undertake to draw a dividing line based upon the percentage of alcohol present. We think, however, that in the present case there was a sufficient quantity of alcohol in all these

importations. to serve a purpose in preserving the fruit so that after being opened the fruit could be used in the ordinary course without fermentation. It served a purpose, therefore, of preserving the fruit, and the fruit was preserved, in that sense at least, in spirits.

The decision of the Board of General Appraisers in each of these cases is *affirmed*.