BEFORE THE SECOND DIVISION, SEPTEMBER 22, 1949

**No. 53577.**—Philipp Feldheim *v.* United States, protest 140184–K (New York).

RAO, Judge: The instant protest raises the question of the proper classification for duty purposes of certain books imported from England by mail. The books, entitled "Essays Presented to J. H. Hertz, Chief Rabbi" of Great Britain were

classified under paragraph 1410 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, T. D. 49753, as all other books, not specially provided for, and assessed with duty at the rate of 20 per centum ad valorem. It was claimed in the protest "that the books should be classified for duty at 7½% under paragraph 1410 as books of a foreign authorship in accordance with T. D. 47600." However, counsel for the Government asserts in his brief that the merchandise "is claimed to be properly dutiable under paragraph 1410 (as modified by T. D. 49753) at 7½ per centum as books of foreign authorship."

T. D. 47600 is the trade agreement with the Belgo-Luxemburg Economic Union. It contains the following modification of paragraph 1410 of the Tariff Act of 1930:

| Tariff Act of 1930; paragraph | Description of articles | Rates of duty |
|---|---|---|
| 1410 | Unbound prayer books; bound prayer books except those bound wholly or in part in leather, and sheets or printed pages of prayer books bound wholly or in part in leather, all the foregoing not specially provided for, if of bona fide foreign authorship. | 7½% ad valorem. |
| | All other prayer books, not specially provided for. | 12½% ad valorem. |

However, T. D. 49753, the trade agreement with the United Kingdom, modifies paragraph 1410 in the following respect:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
|---|---|---|
| 1410 | Unbound books of all kinds, bound books of all kinds except those bound wholly or in part in leather, sheets or printed pages of books bound wholly or in part in leather, pamphlets, music in books or sheets, and printed matter, all the foregoing not specially provided for (except unbound or bound prayer books and sheets or printed pages of prayer books; except tourist literature containing historical, geographic, time table, travel, hotel, or similar information, chiefly with respect to places or travel facilities outside the continental United States; and except diaries): | |
| | If of bona fide foreign authorship_____ | 7½% ad val. |
| | All other_____ | 20% ad val. |

Despite the specific claim in the protest of the applicability of T. D. 47600, *supra*, both parties at the trial apparently proceeded upon the assumption either that the two provisions were substantially the same, or that the case involved a construction of paragraph 1410, as modified by T. D. 49753, *supra*, and therefore that the only issue to be determined was whether or not the involved books were of *bona fide* foreign authorship.

The official papers, specifically Customs Form 4371 entitled "Memorandum to Accompany Invoice" dated June 16, 1948, and the collector's memorandum re protest No. 123, 1948, dated June 25, 1948, indicate that the collector likewise assumed that the claim of the plaintiff was based on the fact that the involved books were of foreign authorship. Since the collector was fairly apprised of the contention of the importer, we regard it as immaterial that the plaintiff in his protest cited T. D. 47600.

As stated by the importer, who appeared in person herein, plaintiff's exhibit 1 is a book produced in England as an anniversary gift in honor of the late Chief Rabbi. It contains 442 pages in English and 111 pages in Hebrew. The importer conceded in his opening statement that with respect to the English portion of the volume, it is the work of 32 authors, 4 of whom, contributing a total of 49 pages, were American. It was further admitted that the Hebrew portion of the book consists of nine authors, one of whom, who contributed six pages, was an American.

Upon cross-examination, plaintiff testified that he did not know whether the author, Drachman, whose article consists of 14 pages, was an American citizen, although he supposed that he was; that Mr. Greenstone, who wrote pages 187 to 202; Mr. Alexander Marx, author of pages 307 to 312, inclusive; and Mr. H. A. Wolfson, who wrote pages 427 to 442, were American citizens; and that he knew nothing about the citizenship of Mr. Samuel Landman, author of pages 261 through 270, or of Mr. Israel Cohen, who contributed pages 81 through 96.

The aforementioned authors are those who, the Government asserts, are American citizens. Examiner Rubenson, who testified on behalf of the defendant, stated that he had no doubt as to the American citizenship of Drachman, Greenstone, Alexander Marx, and H. A. Wolfson, who together were the authors of 52 pages of plaintiff's exhibit 1, and that he thought that Mr. Samuel Landman and Mr. Israel Cohen were also American citizens. The latter two contributed 16 pages of articles to the finished volume, making a total of 68 pages which the Government contends were the work of American authors.

In the case of *G. P. Putnam's Sons* v. *United States*, 71 Treas. Dec. 528, T. D. 48886, it was held that for a book to fall within the provision of paragraph 1410 of the Tariff Act of 1930 as of *bona fide* foreign authorship, it must be wholly or substantially wholly of such foreign authorship. Hence, where 12 pages of the preface of a book were written by a foreign author and 9 pages thereof by an American, and 6 pages of a directory contained in the book were of foreign authorship and 7 pages of said directory were authored by an American, the book was not wholly or substantially wholly of foreign authorship.

The principle that the pertinent provision of paragraph 1410 means wholly or substantially wholly of foreign authorship was reaffirmed in *J. E. Bernard & Co., Inc.* v. *United States*, 6 Cust. Ct. 84, C. D. 433.

Consequently, we are here concerned with the question of whether the instant books are wholly or substantially wholly of foreign authorship. Even accepting the figures conceded by the plaintiff, to wit, that there are 553 pages in the entire book of which 55 were the product of American authorship, we must conclude that they are not. American citizens are the authors of approximately, and at the very least, 10 per centum of the entire volume. Of the 41 writers whose essays compose the imported volumes, 5, or approximately 12 per centum, are admittedly Americans. Their contribution to the complete text is a substantial one which cannot be disregarded in determining whether the book is or is not of foreign authorship.

In *Oxford University Press, N. Y., Inc.* v. *United States*, 12 Cust. Ct. 216, C. D. 857, reversed on other grounds in 33 C. C. P. A. (Customs) 11, C. A. D. 309, we

held that where it was established that 2.45 per centum of the total of 1,141 pages of an anthology of English verse were of American authorship, such portion was a substantial one and therefore the anthology was not to be regarded as wholly or substantially wholly of foreign authorship within the purview of paragraph 1410 of the Tariff Act of 1930. We arrived at the point where it was necessary to determine the degree of importance of the contribution of American authors by first holding that all of the authors whose poems were included in the completed anthology were to be deemed co-authors in the ultimate work.

The Court of Customs and Patent Appeals in reversing this court held that the English and American poets whose literary compositions comprised the volume could not be considered co-authors, as co-authorship implies a joint effort in preparing and writing the ultimate product, and that there could, of course, have been no such joint effort on the part of poets whose works ranged over a period from 1250 to 1918. Consequently, the court held that the authorship of the anthology rested in the person who, with the expenditure of much intellectual labor and the application of rare literary skill, had produced and prepared the manuscript of the whole book for publication, and he, being admittedly a subject of Great Britain, it was immaterial to consider whether the portion of the contents of the volume consisting of poems originally written by American poets was substantial or otherwise.

The frontispiece of the volume of essays in the case at bar indicates that three individuals edited the book, but the extent of their contribution, the amount of literary skill and intellectual labor expended in the completed work, do not appear anywhere in the record. The absence of any such evidence leads inevitably to the conclusion that their efforts were solely mechanical and that the individual authors of the individual essays themselves were co-authors of the final production. Consequently, the ruling of the Court of Customs and Patent Appeals in the case of *Oxford University Press, N. Y., Inc.* v. *United States, supra,* is not here applicable.

In determining whether the 2.45 per centum of American authorship in the "Oxford Book of English Verse," the anthology involved in *Oxford University Press, N. Y., Inc., supra,* was a substantial contribution to the volume, we reviewed certain cases which considered the problem of what constitutes a substantial part on the one hand and what quantity of a whole may be disregarded as trivial or negligible, to wit, *Godillot* v. *United States,* 1 Ct. Cust. Appls. 239, T. D. 31275; *United States* v. *Bryant & Beinecke,* 10 Ct. Cust. Appls. 79, T. D. 38355; *Thornley & Pitt* v. *United States,* 5 Cust. Ct. 169, C. D. 393; *Cosmos Textile Corp.* v. *United States,* 21 C. C. P. A. (Customs) 124, T. D. 46449; and *Schenkers (Inc.)* v. *United States,* 59 Treas. Dec. 1257, T. D. 44916, and concluded therefrom that 2.45 per centum of a whole was not an inconsiderable amount.

In the recent case of *Corporacion Argentina de Productores de Carnes* v. *United States,* 32 C. C. P. A. (Customs) 175, C. A. D. 304, it was held that 5.8 per centum of grain or grain products in an importation of dog food was a quantity that could not be ignored and therefore was a substantial quantity. Consequently, a preparation of mixed dog food containing 5.8 per centum of grain or grain products was held to be properly dutiable as mixed feeds consisting of an admixture of grains or grain products with oil cake, oil-cake meal, molasses, or other feedstuffs dutiable under paragraph 730 of the Tariff Act of 1930.

In view of the foregoing decisions we are constrained to hold that where, as here, a volume of essays contains a minimum of 10 per centum of material written by American authors, the volume is not wholly or substantially wholly of foreign authorship. The protest is therefore overruled. Judgment will be entered accordingly.