(C.D. 2536)

JOHN S. CONNOR, INC. v. UNITED STATES

United States Customs Court, First Division

(Decided May 6, 1965)

*Allerton deC. Tompkins* for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

Before WILSON and NICHOLS, Judges; OLIVER, C. J., not participating

NICHOLS, Judge: The merchandise involved in this case, imported from Japan and entered at the port of Baltimore on January 5, 1961, is described on the invoice as wooden spinning wheel planters and is in two sizes, one valued at $5.48 per dozen and the other at $3.54 per dozen. It was assessed with duty at 25 per centum ad valorem under paragraph 409 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877, as articles not specially provided for, partly manufactured of bamboo. It is claimed that the articles are properly dutiable at 16⅔ per centum ad valorem under paragraph 412 of said tariff act, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373, supplemented by T.D. 52476, as manufactures of which wood is the component material of chief value, not specially provided for.

The pertinent provisions of the tariff act are as follows:

[Par. 409, as modified, *supra*]. All articles not specially provided for, wholly or partly manufactured of rattan, bamboo, osier, or willow * * *:

    \*      \*      \*      \*      \*      \*      \*

    Other_____ 25% ad val.

[Par. 412, as modified, *supra*]. Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:

    \*      \*      \*      \*      \*      \*      \*

    Other * * *_____ 16⅔% ad val.

At the trial, Paul F. Connor, vice president of John S. Connor, Inc., customhouse broker, the plaintiff herein, testified as follows: For a number of years, various shipments of spinning wheel planters had been entered at 16⅔ per centum ad valorem under paragraph 412, *supra*, and the instant merchandise was so entered. In the latter part of 1961 or the early part of 1962, he had had some discussions with the late Charles L. Bitzel, examiner at Baltimore, at which time Mr. Bitzel told him that he was going to classify these spinning wheel planters under paragraph 409, *supra*, at 25 per centum ad valorem for the reason that a small peg was made of bamboo. On several occasions,

he gave the witness samples representing such merchandise. Two samples were received in evidence as plaintiff's exhibits 1 and 2. They are in the form of miniature spinning wheels, apparently of wood, with a receptacle for holding a small plant, but are not working models. The receptacle in exhibit 1 is of plastic and that in exhibit 2 of wood lined with metal or plastic.

During the discussions, Mr. Bitzel pointed out to Mr. Connor the portion found to be of bamboo. Mr. Connor described it as a small cross-bar or cross-pin, 1¼ inches in length and about ¹⁄₁₆ of an inch in diameter, running through the peg known as the distaff, which is at the end of the exhibit farthest from the spinning wheel. The cross-pieces on the samples were marked exhibits 1–A and 2–A. According to the witness, Mr. Bitzel did not refer to any other portions of the planters as being of bamboo, and the witness had no knowledge that there were any such. He recognized the exhibits as importations made for the account of the Royal Sales Co. of Louisville, Ky., by the special seal made for Royal Sales, which is affixed in Japan to each planter.

Subsequently, and on April 4, 1962, Mr. Connor addressed a letter to the Bureau of Customs to be transmitted through the collector at Baltimore, stating that the merchandise had been classified as in part of bamboo because the appraiser had discovered that each planter had a bamboo peg, and claiming that the peg was incidental to the construction of the article and of insignificant value and that the rule of "*de minimis non curat lex*" should be applied. This letter was transmitted by the assistant collector with a letter stating that the distaff peg was claimed by the examiner to be of bamboo. (Plaintiff's collective exhibit 3.)

On cross-examination, Mr. Connor said that, in the course of his discussions with Mr. Bitzel, the latter had sent him samples which he brought back to him and that he did not know whether exhibits 1 and 2 were the ones present when he discussed the matter with Mr. Bitzel. Mr. Bitzel did not identify the shipment from which the samples came and the witness did not know. He did not know the name of the manufacturer of either exhibit 1 or exhibit 2, but stated that the commercial invoice attached to the within entry gave the names of two manufacturers: Tokyo Mokuzai Kogei Seisakusho and Makino Hajime Shoten.

Mr. Connor could not identify of his own knowledge the bamboo portions of this merchandise and did not know whether the peg on the axle of the spinning wheel was made of bamboo.

Henry S. Frank, secretary and treasurer of Royal Sales Co. of Louisville, Ky., testified that he had a part in buying this merchandise and saw it when it came in. He recognized exhibits 1 and 2 as being his importations by the insignia which is placed on the bottom

in Japan. They are representative of merchandise imported by his firm. He did not know at the time of importation that they contained bamboo but had since been told so. He said that the bamboo portion consisted of the pin which ran through the distaff and that it did not have any function or serve any utilitarian purpose. He did not know why it was there and assumed that pieces of wood would serve the same purpose.

Mr. Frank testified that three manufacturers made these planters, all in accordance with his firm's specifications, but that he could not tell which one made either exhibit 1 or exhibit 2. He identified these exhibits as representative of the items valued at $5.48 per dozen and said that the items valued at $3.54 per dozen were similar, were slightly smaller, had posts which had not been turned but were tubular, and were less expensive altogether.

Plaintiff offered in evidence a statement from one of the manufacturers certifying the value of the bamboo peg, but its admission was objected to and it was not received.

Plaintiff concedes, in its brief, that the provision covering "articles partly or wholly manufactured of bamboo" is more specific than the provision for manufactures of which wood or bark is the component material of chief value. In the ordinary course, since this merchandise consists of articles in part of bamboo, even if wood is the component material of chief value, it would be dutiable under paragraph 409, *supra*. *Bough* v. *United States*, 14 Ct. Cust. Appls. 60, T.D. 41575; *Calumet Manufacturing Co.* v. *United States*, 44 Treas. Dec. 403, T.D. 39938; *Norman G. Jensen, Inc., of Calif., etc.* v. *United States*, 50 Cust. Ct. 301, Abstract 67721. Plaintiff claims, however, that, in this instance, the bamboo portion of the merchandise is trifling and should be ignored.

In addition to opposing that view, defendant contends that plaintiff has failed to establish (1) that the samples are representative of the merchandise covered by the protest, (2) that the bamboo portion is limited to the cross-piece through the distaff, and (3) that the merchandise is a manufacture of which wood is the component material of chief value. These are important fact issues which must be resolved before we get to the question of law.

(1) The samples, exhibits 1 and 2, could not be proved to have been part of the merchandise in this litigation. They may have been. They were in possession of the examiner, as official samples from some shipment, and the examiner delivered or redelivered them to the customhouse broker at the time of advising him that, in his view, the imported articles herein were in part of bamboo, dutiable under paragraph 409, *supra*. But if not from the merchandise in litigation, they were from other similar shipments, and in all essential respects were the same as the merchandise at bar. The hearing judge received them

as "exhibits," without the qualification "illustrative." We hold that they are entitled to full weight as "potent witnesses" (*Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676) as much as samples received in any litigation before this court.

(2) On analysis of the testimony, it will be seen that apart from the samples, plaintiff relies entirely on the admissions of customs officers to prove there is no bamboo in the merchandise except the cross-pin in the distaff, already mentioned. Such admissions consist of (a) statements by a customs examiner, since deceased, to the custom-house broker, and (b) a letter by the assistant collector to the Bureau of Customs. We do not think defendant is bound by this evidence. Apart from its being hearsay, the individuals involved are subordinates. If anyone could bind the Government, it would only be the person (unidentified, but not the author of this opinion) who responded on behalf of the Bureau to the request for a Bureau determination. Plaintiff fails to show any authority delegated to the persons whose views are before us. *Cf.* T.D. 52588. No doubt, as individuals, they are knowledgeable in customs matters. Plaintiff could have subpoenaed them to testify at the trial, which was conducted at Baltimore, their headquarters. The examiner, it is true, is dead, but he was, in any event, not the legal classifying officer.

However, on careful examination of exhibits 1 and 2, with a magnifying glass, we find there is no bamboo in the merchandise, except in the above-mentioned cross-piece. Bamboo is a woody or arborescent grass, quite unlike ordinary wood in grain and fiber. The cross-piece in the distaff resembles in these respects only itself while the other parts are seen to resemble each other. We know by the collector's classification that there is *some* bamboo in the samples, and this is not controverted so it stands presumptively correct. The non-expert person might not readily determine this, but having been guided thus far, the nonexpert can find the bamboo he knows is there in the cross-piece and see there is nothing like it elsewhere in the article. *Cf. Krusi* v. *United States*, 1 Ct. Cust. Appls. 168, T.D. 31213. The bamboo pin is one of 22 parts and, being one of the smallest, it cannot represent one one-hundredth of the entire article, by weight or by volume. While the article simulates an antique spinning wheel, it is not a working model, and the pin, therefore, performs no function. There could have been no commercially significant difference in appearance or in any other respect if the pin had been of ordinary wood. Here, as so often happens, importer has been led into a customs trap by an unexplained vagary of its supplier overseas with respect to the material it employed.

(3) The testimony again fails us in establishing that wood is the component material of chief value. Assuming the evidence shows that Baltimore customs officers so held before they discovered the bamboo

pin, this fact is without legal significance. *Calumet Manufacturing Co. v. United States, supra.* However, the samples themselves again are potent witnesses. It is not necessary to offer evidence of comparative costs to prove what component material is of chief value when the most casual examination of the article shows that only one material can be. Defendant cites *Strakosh* v. *United States*, 1 Ct. Cust. Appls. 360, T.D. 31453, to the effect we cannot so find from the samples alone, but that case did not involve a sample and the matter is governed by *Krusi* v. *United States, supra*, in the same volume, which did involve a sample. Here, we have 20 parts of wood, all turned and cut to design, one tiny part of bamboo, a plastic tray, a few nails, and a piece of string. The wood comes into the value comparison enhanced in value by the cost of all labor performed on it before final assembly. *Seeberger* v. *Hardy*, 150 U.S. 420; *United States* v. *Jovita Perez et al.*, 44 CCPA 35, C.A.D. 633, and cases cited; *Swiss Manufactures Association, Inc., et al.* v. *United States*, 39 Cust. Ct. 227, C.D. 1933, appeal dismissed 45 CCPA 129. We think counsel on both sides, and the hearing judge, assumed *sub silentio* that wood was the component material of chief value. The invoice description established this *prima facie* and everyone accepted it as so. The collector's classification was not in conflict with the material being so. *United States* v. *Bullocks, Inc.*, 24 CCPA 41, 44, T.D. 48330. Government counsel objected to testimony about the former classification of the merchandise, which would imply it had been held to be in chief value of wood under paragraph 412. But the objection as stated, was simply that the answer was not responsive to the question. No broader ground was ever added. Thus, the inference is, the Government did not mind the court's knowing the former practice. However, counsel are warned that in less obvious cases the court cannot determine component material of chief value by the means used herein.

Since we find that the merchandise is in chief value of wood, that one (and one only) relatively insignificant component is of bamboo, and that, except for tariff purposes, it makes no difference whether the component in question is of bamboo or wood, the stage is set for decision of the legal questions posed by counsels' briefs.

Both sides rely on *Varsity Watch Co.* v. *United States*, 34 CCPA 155, C.A.D. 359, the defendant without citation of any other authority. We are justified in starting our consideration there. It involved the much-litigated watch paragraph, 367, and specifically whether watchcases in chief value of base metal were to be considered for tariff purposes "in part of gold" by reason of a quantity of gold, "a mere speck" (p. 157), added by the electrolytic process "with a definite purpose of imparting a gold appearance" (p. 158). The court held it was "in part of gold," relying in part on the fact that the gold, however insignificant in quantity, added to the salability of the cases

and was plated on for that purpose. It also relied on the inclusion in the paragraph claimed by plaintiff of the words, "and not containing gold."

The opinion discusses the rule *de minimis*, does not deny its possible application, in light of authorities considered, but says whether the gold content is *de minimis* depends less on its relative volume than on the effect it has on the attractiveness and salability of the article. For a few months, it seemed, until wear took its toll, the article looked like a gold watch. And the court added (p. 163):

> If it happened that gold got into the article by accident, if it did not enhance its value and had no purpose in commerce, if it were an unintentional adulterant or the result of an unforeseen and undesired chemical reaction, of course the situation, depending upon all the facts, might be different.

While this paragraph is mere dictum, it would seem sufficient to strip *Varsity Watch* of all its value to defendant. The second possible instance for application of *de minimis* fits the case before us as a glove fits a hand. The bamboo herein does indeed not enhance the value of the imported article, and it has no purpose in commerce. As defendant cites no other case, its position seems bereft of all support in authority.

*Seeberger* v. *Schlesinger*, 152 U.S. 581, involved opera glasses held by the Court to be dutiable as "in part of metal" although the component material of chief value was shell. The Court said it might have held otherwise in case of material which was "a mere incident or an immaterial part of the completed article, as, for instance, the screws or knobs upon an article of household furniture, or the buttons upon an article of clothing * * *." (P. 587.) The date of this case is 1894.

Thus we have two dicta from authoritative sources which, if controlling here, would require, or at least permit, a decision for plaintiff on the facts we have found. Courts have applied or refused to apply the *de minimis* rule in many situations where the statutory language did not prescribe duties on articles "in part of" X material, but where for other reasons the presence of a particular material might have determined the classification of the article. *United States* v. *Aetna Explosives Company*, 256 U.S. 402; *B. Westergaard & Co.* v. *United States*, 19 CCPA 299, T.D. 45469; *United States* v. *McLaughlin & Freeman*, 13 Ct. Cust. Appls. 404, T.D. 41324; *United States* v. *Mandel*, 1 Ct. Cust. Appls. 223, T.D. 31259; *Corporacion Argentina de Productores de Carnes* v. *United States*, 32 CCPA 175, C.A.D. 304; *Godillot* v. *United States*, 1 Ct. Cust. Appls. 239, T.D. 31275; *Bemis Bro. Bag Co.* v. *United States*, 11 Ct. Cust. Appls. 373, T.D. 39162; *Cosmos Textile Corp.* v. *United States*, 21 CCPA 124, T.D. 46449. The rule to be deduced from these cases is that the controlling factor is not the precise quantity of the material, which may be substantial, but

the purpose for which it is used and its effect on the nature of the article and its salability.

The second division of this court has held that the rule *de minimis* does not apply to paragraph 1529(a), so that articles "in part of braid" are so dutiable, no matter how insignificant the braid portion is. *The May Department Stores Co., Inc.* v. *United States*, 42 Cust. Ct. 373, Abstract 63041. This result is readily explained by peculiar statutory language and legislative history applicable to paragraph 1529(a) alone. See discussion in *P. & G. Robinson* v. *United States*, 24 Cust. Ct. 10, C.D. 1201. We do not think the braid cases are controlling or that in a different context they require statutory language to be interpreted as overriding any application of any rule *de minimis*.

Tariff language, "articles in part of" X, frequently leads to results unsatisfactory to any adjudicating tribunal. Importers may stumble into bear traps, with high rates based on the presence of components perhaps unknown to them, or accidental, or mere inert carriers, or not specified. On the other hand, other more astute importers may obtain the assessment of lower rates on the basis of components added simply to influence the tariff classification. Suppose, as could easily happen, trade agreement adjustments might make articles in part of bamboo dutiable at a lower rate than articles in chief value of wood. Then, if the defendant is right, future importers might obtain the insertion of insignificant bamboo components in wooden articles. How would we react? We must assume that Congress knew what it was doing and that we are not authorized to make tariff schedules on Congress' behalf. On the other hand, Congress expected us to resolve ambiguities, and it was on notice, in enacting "articles in part of" language, that the rule *de minimis* might be held to apply. Congress certainly intended to erect a working and effective system of tariff protection. We are not to suppose, therefore, that Congress intended to open up easy means of tariff avoidance. However, we need only consider the situation of the paragraph 409 rate being the lower rate, to see that we would open up such a way if we allowed paragraph 409 to be invoked by a mere insignificant component of bamboo being made part of the completed article.

Under all the circumstances, we hold that the rule *de minimis* applies to paragraph 409 to the extent that an article should not be considered to be in part of bamboo when the bamboo is a mere incident or immaterial part of the entire article, or when the bamboo component does not enhance its value and has no purpose in commerce, by contrast to a like component of wood. We believe this holding effectuates the intent of Congress and will be feasible for application whether paragraph 409 prescribes a higher or a lower duty than the competing paragraph.

Applying the rule which, as we hold, governs, the article must be classified under paragraph 412 as a manufacture in chief value of wood, and the protest must be sustained. Judgment will be rendered accordingly.