(C.D. 2607)

Morris Friedman & Co. *v.* United States

United States Customs Court, First Division

(Decided December 29, 1965)

*Tompkins & Tompkins (Allerton deC. Tompkins* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Arthur H. Steinberg,* trial attorney), for the defendant.

Before OLIVER, WILSON, and NICHOLS, Judges

NICHOLS, Judge: The merchandise involved in this case is described on the invoice as whisky cup candles and was assessed with duty at 20 per centum ad valorem under paragraph 1536 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 54023, as candles. Additional duty was assessed on the ceramic portion as an unusual container, by virtue of section 504, at 10 cents per dozen pieces and 25 per centum ad valorem under paragraph 211 of said tariff act, as modified by said trade agreement, supplemented by T.D. 53877, as decorated earthenware, not tableware. It is claimed in the original protest:

Said cups are not unusual containers; they should be classified with duty only at 20% or 25% plus 10¢ per dozen pieces under Para. 211, the candles being separately classified under Para. 1536 with duty at 20%.

In an amendment, it is further claimed that the merchandise should be classified "as entireties at 20% under Paragraph 1536, Tariff Act of 1930 as modified, T.D. 54023, or at 10¢ per dozen plus 20% or plus 25% under Paragraph 211 of said act as modified, T.D. 51802, T.D. 53857, T.D. 53877."

The pertinent provisions of the tariff act are as follows:

Par. 1536 [as modified by T.D. 53865 and T.D. 54023, *supra*].
Candles_____ 20% ad val.

## SEC. 504.   COVERINGS AND CONTAINERS.

If there shall be used for covering or holding imported merchandise, whether dutiable or free of duty, any unusual material, article, or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duties shall be levied upon such material, article, or form at the rate or rates to which the same would be subjected if separately imported.

Par. 211 [as modified by T.D. 53865 and T.D. 53877, *supra*].
Earthenware and crockery ware composed of a nonvitrified absorbent body, including * * * mugs, cups, * * * and all other articles composed wholly or in chief value of such ware; * * * colored * * * ornamented, or decorated in any manner, and manufactures in chief value of such ware, not specially provided for:

Tableware, kitchenware, and table and kitchen utensils:

\*          \*          \*          \*          \*          \*          \*

articles which are not plates, cups, or saucers and which are valued over $1 but under $2 per dozen articles;

\*          \*          \*          \*          \*          \*          \*

Plates of the diameters specified heretofore in this item, cups, saucers, and articles other than plates, cups, and saucers; each of the foregoing which is valued at not more than the minimum value specified heretofore in this item in respect of the like article_____ 10¢ per doz. pieces
and 25% ad val.

Articles which are not tableware, kitchenware, or table or kitchen utensils, valued per dozen articles—
Under $3 _____ 10¢ per doz. pieces
and 25% ad val.

At the trial, the official sample was received in evidence as plaintiff's exhibit 1.   It consists of a ceramic article in the shape of a miniature mug, with decorations on the outside, depicting a Christmas candle, holly, and bells.   In the inside, there is a red wax or paraffin substance with a wick in the center.   This substance is affixed to the mug and cannot be removed without destroying it or breaking the mug. The mug is 1½ inches in height and has a diameter of 1¼ inches.   The wax portion is 1¼ inches in height.

Theodore Lafair, general manager of Lafair Sons Co., the importer herein, testified that the article was a novelty candle in a candleholder. (The term "whisky cup" was used by the seller in Japan, but was not used by the importer in selling the merchandise.)   Because of the decorations, the article could be sold only at Christmas time.   It cost

the importer about 3½ cents each and was sold for about double that. The constituent parts are ceramic earthenware, wax paraffin, the wick, and paint. While the witness had not seen this merchandise made, he stated that it would be impossible to produce it, except by pouring liquid wax into the ceramic portion. Since the wax at the center is wider than the opening of the top, it is impossible to pull the wax out. If heated, it will become liquid and can be poured out. After the article has been lighted for a considerable period of time, the wax will burn off, and a residue of wax and charred wick will remain at the bottom.

The witness knew of no use for the merchandise other than as a combined article. He called it a novelty candle for the Christmas season that is self contained. The "cup" portion has no separate use as such because it is inexpensive, very easily broken, and charred wax remains therein after the candle portion is burned. It would be troublesome to clean out and the paint would wash off. It is thrown away after the candle is consumed. The witness added that larger patio lights which have citronella wax poured into glass, for use as insect repellant, are also thrown away after use and are not cleaned.

Counsel for defendant showed the witness an empty ceramic mug (defendant's illustrative exhibit C for identification), which was the same as the ceramic portion of the imported merchandise (plaintiff's exhibit 1), but he said he had no recollection of importing plain cups. He called exhibit 1 a candle mug and exhibit C a mug. In answer to a question as to whether the ceramic portion of exhibit 1 was a container, he testified:

The word "container," if it's used as a holder, I would agree. The word "container" becomes a touchy one in this instance so I prefer to refer to it as a holder. Technically, I guess you could say it was a container also, your Honor. I don't know.

He added that the ceramic portion served only as a holder for the wax and was decorated to make it attractive instead of using a plain white holder. It had no use as a knickknack or for drinking after the candle portion was consumed. His firm regards novelty candles which are an inch in height and which are imported with their holders as entireties.

On the basis of his knowledge of the candle importing business, the witness stated that a majority of all candles imported were not in containers such as the ceramic portion of the instant merchandise. He was shown novelty candles in a cardboard box and said that the items here were imported in sets of four in a cardboard box.

Mr. Lafair testified, further, that the total value of the imported merchandise is $1.80 per dozen sets; that 60 cents represents the cost

of the wax and $1.20 the cost of the four cups; in other words, that the cup portion is worth twice as much as the wax portion.

Since the collector assessed the merchandise with duty as a candle in an unusual container, and the importer claims it is an entirety, the first question to be determined is whether the collector was correct in this. "An article cannot be at the same time both the merchandise which is being imported and the container for the merchandise which is being imported." *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, 313, C.D. 1619. In that case, it was held that an inhaler, consisting of three parts, a holder, a cotton core, and inhalant, imported in a completely assembled condition, in which the individual parts were subordinated in the creation of the combined article of commerce, was an entirety for tariff purposes. The court summarized the doctrine of entireties as follows (p. 315) :

* * * If what is imported as a unit is actually and commercially two or more individual entities which, even though imported joined or assembled together, nevertheless, retain their individual identities and are not subordinated to the identity of the combination, duties will be imposed upon the individual entities in the combination as though they had been imported separately. Conversely, if there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent.

In *F. B. Vandegrift & Co., Inc.* v. *United States*, 43 Cust. Ct. 22, C.D. 2097, it was held that a moisture tester, consisting of a balance scale, scoop, brush, and case, was an entirety. It was pointed out that the case had a function during the operation of the tester, that of providing a platform for the scale, and contributed to one of the characteristics of the tester, its portability. The court said (p. 26) :

Here, we have an article known as a portable moisture tester, the portability feature of which very largely, if not exclusively, is due to the case. There is uncontradicted testimony that such portable moisture testers are always furnished with wooden cases such as those at bar, from which testimony and other evidence in the case the court can infer that the complete commercial entity which is a portable moisture tester is one which has such a case. In that sense, the case does merge with the other parts to form the complete article of commerce.

\* \* \* \* \* \* \*

The whole is the sum of its parts, and we are satisfied that the whole commercial entity which was imported here was a portable moisture tester, a necessary part of which is the case in which the other parts of the tester is contained.

Also relevant are *James Betesh Import Co.* v. *United States*, 40 Cust. Ct. 186, C.D. 1981; *Ross Products, Inc.* v. *United States*, 43 Cust. Ct.

74, C.D. 2106; *Arnart Imports, Inc.* v. *United States*, 54 Cust. Ct. 187, C.D. 2531; *American Customs Brokg. Co. for acct. of Asiatic Trading Co., Ltd.* v. *United States*, 43 Cust. Ct. 329, Abstract 63221; *Pez Haas, Inc.* v. *United States*, 46 Cust. Ct. 290, Abstract 65026.

In the *James Betesh* case, it was held that merchandise, consisting of an earthenware bowl set in a three-pronged wire holder or tripod, one of whose prongs was bent to form a cigarette rest, bought, sold, and used as an ashtray, was an entirety. The court noted that while the bowl was complete in itself as a bowl, it was not complete as an ashtray, and the holder alone was not a complete article ready for use, but that when the two were put together, a new and distinct article of commerce was formed.

In *Arnart Imports, Inc.* v. *United States, supra*, the merchandise consisted of wall plaques, composed of a porcelain center with a raised figure attached to a velvet pad and enclosed in a decorated wooden frame. It was possible to disassemble the article, and, when disassembled, the wood frame was still a frame which might be sold as such, but the porcelain-velvet portion could not be. The court stated:

* * * The record before us shows that these articles actually were imported as single commercial entities and that the importer intended to sell them and did sell them as such. They are a single commercial entity for tariff purposes, notwithstanding the fact that they could be disassembled after importation without commercial injury to one of the component parts. It is not essential to classification as entireties that imported articles should be incapable of being disassembled into parts. We are cited to no authority for such a proposition, and we have found none.

In the instant case, the merchandise is imported as a unit. It cannot be disassembled without destroying one or both of the components. It is bought and sold as a unit, and functions as a unit. The candle portion never had any separate identity as a candle. While the cup portion might have a separate identity as a miniature mug, it was not imported or used as such, according to the testimony, and required the addition of the wax portion to become the completed article. The cup is not a container, usual or unusual, but an integral functioning portion of the entire article.

The cases cited by defendant to support its contention that the merchandise consists of a candle in an unusual container are different. *McKesson & Robbins, Inc.* v. *United States*, 27 CCPA 157, C.A.D. 77, went off entirely on the insufficiency of the evidence to meet the presumption that the collector's classification was correct. *Meyer & Lange* v. *United States*, 12 Ct. Cust. Appls. 15, T.D. 39892, involved mustard imported in a decorated jar, called a mug with a handle. The usual container was undecorated and without a handle. Evidently the features of the mug had no relation to the use of the mustard. Acc:

*United States* v. *Charles H. Demarest, Inc.*, 19 CCPA 186, T.D. 45293. In *United States* v. *Hohner*, 4 Ct. Cust. Appls. 122, T.D. 33393, the low value of the container was held a factor in holding it not "unusual," but if the alleged container, as here, is not really a container at all, the converse does not hold true. In the instant case, the merchandise is one physical entity and is designed and used as a unit.

The authorities cited likewise support the next step we take, which is to hold the import to be dutiable as an entirety.

The final question is the identity of the entirety imported. Plaintiff claims that it is a candle, or, if not that, an article in chief value of earthenware, decorated. Defendant claims that it is more than a candle and cannot be classified as an earthenware article, since the evidence does not establish that it is in chief value of earthenware.

The term "candle" has been defined as follows:

1. A slender cylindrical body of tallow, wax, spermaceti, paraffin, or some similar substance, containing a wick of loosely twisted linen or cotton threads, used to furnish light. * * * Candles are made by repeatedly dipping the wicks in the melted tallow, etc. (as "tallow dips"), by drawing a continuous wick through the tallow (as "drawn candles"), by pouring the melted material over the wicks (as wax candles), or, commonly, by casting in a mold. [Webster's New International Dictionary.]

1. A cylinder of tallow, wax, spermaceti, paraffin, or other solid fat, formed by molding, rolling, or dipping, and containing a central wick intended to burn with a light-giving flame. [Funk & Wagnalls New Standard Dictionary.]

A rod of fatty or waxy material through the centre of which runs a fibrous wick. [Encyclopaedia Britannica, vol. 4, p. 738.]

There is also an article known as a night light, which is sometimes made by filling a case of paper, wood, or pasteboard with melted candle material after which the wick is set in position. These are generally placed in a saucer of water when burned. Others are molded in the same manner as ordinary candles and are generally burned in glass dishes. Wright and Mitchell, Oils, Fats, Waxes, and their manufactured products, page 767; Thorpe's Dictionary of Applied Chemistry, volume II, pages 268–269.

When the provision for candles was before the Subcommittee of the Senate Finance Committee prior to the enactment of the Tariff Act of 1930, reference was made to lights or votive candles as follows:

Senator WALSH. I notice in the churches they are using substitutes for candles a good deal—using a good deal of oil cups. I suppose that that has somewhat affected your business.

Mr. BAUMER. That is known as votif candle. That is not oil in there; that is paraffin. When it melts, it looks like oil.

\* \* \* \* \* \* \*

Senator WALSH. Are these votif lights, we have, called candles?

Mr. BAUMER. They are called votif lights.

Senator WALSH. Does not the customs department classify them as candles?

Mr. BAUMER. No, they are called night lights, ordinarily. [Hearings before a Subcommittee of the Committee of Finance, United States Senate, Seventy-First Congress, first session, on H.R. 2667, pp. 707, 710.]

Paragraph 1536, in its original enacted form, which reads:

Candles, 27½ per centum ad valorem; manufactures of amber, bladders, or wax, or of which these substances or any of them is the component material of chief value, not specially provided for, 20 per centum ad valorem.

suggests that a "candle" need not be in chief value of wax, but the legislative history sharply limits this. Under paragraph 1438 of the 1922 act, candles were not separately provided for and were generally dutiable as "manufactures of wax," which included mineral paraffin (*United States* v. *Coccaro et al.*, 4 Ct. Cust. Appls. 506, T.D. 33921), Summary of Tariff Information, 1929, schedule 14, page 2074. The House of Representatives received a request by domestic candlemakers alleging the paragraph 1438 rate was inadequate. Hearings, volume XIV, schedule 14, Seventieth Congress, second session, page 7751. They increased the rate on candles to 35 per centum, leaving other paragraph 1438 articles unchanged, so they had to change the language to mention candles specifically, but no significant import business had been done in candles dutiable under any other paragraph; nearly all had been of wax. Supplement to Tariff Information on Items in Tariff Bill of 1930 (H.R. 2667), Subject to Conference, page 534. The Senate reduced the rate back to 20 per centum, and it ended up after conference at 27½ per centum. Thus, the only substantial purpose of adding "candles" to the 1922 enumeration was to break them out from the category of "manufactures of wax" and assess them with a higher duty than was prescribed in the same paragraph for wax articles, other than candles. The few candles not dutiable under the 1922 act, paragraph 1438, had been dutiable under that act, paragraph 1459, as "nonenumerated manufactured articles" of which 1929 imports were valued at only $5,289. As they were "other than wax," it would seem something else constituted the combustible material. This history contains nothing to suggest any intent to add, by use of the word "candles" in the 1930 act, any articles, whether or not candles in ordinary speech, not wholly or in chief value either of wax or some other material having a similar function, and, specifically, there was no intent to transfer any article in chief value of ceramic earthenware, such articles not being listed at page 2074 of the *Summary*, *supra*, as among those classified under old paragraph 1459. The appearance that a "candle" under the 1930 act might be other

than in chief value of wax or a substitute for wax is, therefore, refuted, and the imports herein cannot be classified under paragraph 1536.

Although the collector assessed duty on the merchandise under paragraph 1536, *supra*, as candles, this action was coupled with his assessment of additional duties on the ceramic portion as an unusual container. Thus, his classification does not establish that the entirety is a candle. In our view, it is not.

The question then arises as to its proper classification for tariff purposes. If of chief value of earthenware, classification under paragraph 211, as modified, *supra*, at 10 cents per dozen pieces and 25 per centum ad valorem is proper. (It need not be determined whether the articles are tableware or kitchenware or not, since the rates are the same for articles valued at less than $1 per dozen articles, and these articles have been appraised at $1.80 per dozen sets of four.)

According to the witness, there are four component materials in the article: Ceramic earthenware, wax paraffin, the wick, and the paint. The cup portion, consisting of the earthenware and the paint, was appraised at $1.20 per dozen sets, and was assessed with duty as in chief value of earthenware. Since the entirety was appraised at $1.80 per dozen sets, the value of the wax portion, consisting of the wax and the wick, was $0.60. As the cup portion is in chief value of earthenware, the value of the earthenware therein must amount to at least $0.61, which is more than the value of the entire wax portion. On the basis of the appraised values, therefore, it would appear that the article is in chief value of earthenware.

Is this sufficient to establish earthenware as the component material of chief value? The courts have held that the proper method of determining component material of chief value is to ascertain the costs of the separate parts or component materials to the manufacturer at the time they are ready to be combined into the completed article. *United States* v. *Rice-Stix Dry Goods Co.*, 19 CCPA 232, T.D. 45337; *Adolph Goldmark & Sons Corp.* v. *United States*, 31 CCPA 6, C.A.D. 241; *United States* v. *H. A. Caesar & Co.*, 32 CCPA 142, C.A.D. 299.

In the *Rice-Stix* case, it was stated that the metal portion of the imported atomizers was of greater value than the glass. That statement was based on the prices on the invoices: Mountings, 72 and 84 crowns per dozen; glass bodies or containers, 41, 45, and 60 crowns per dozen; and extra glass tubes for mounts, 4 crowns per dozen. Although the mountings were composed of glass, metal, rubber, and silk, the witness was unable to give the comparative values of those components. The court held the evidence insufficient to establish that the articles were in chief value of metal, stating (p. 234):

All of the testimony in this case was predicated upon the invoice values, the prices paid by the importer. These prices, of course, in-

clude the manufacturer's profit and probably other items of value. There is no evidence of the costs to the manufacturer of the separate parts or components of the involved articles at the time such parts or components were ready to be assembled or combined. * * *

Although the court did not base its holding on the point, it is evident that since the mountings contained glass as well as metal in unknown amounts, it could hardly be determined that even the mountings were in chief value of metal.

In *Wheeler & Miller et al.* v. *United States*, 54 Cust. Ct. 137, C.D. 2521, we pointed out also:

Except where the statute contemplates that a mixture may be a component material of chief value (*cf. Border Brokerage Company* v. *United States*, 40 Cust. Ct. 298, C.D. 1997) and except for chemical combinations and mixtures (*cf. Vandergrift Forwarding Co. et al.* v. *United States*, 37 Cust. Ct. 18, C.D. 1793), the materials must be single materials: Two or more different materials cannot be preassembled together to make a combined material for value comparison purposes. *Swiss Manufactures Association, Inc., et al.* v. *United States*, 39 Cust. Ct. 227, C.D. 1933, appeal dismissed 45 CCPA 129. * * *

We held, therefore, that where the imported chair was composed of rattan, peel, nails, tin feet, and varnish, the value of the rattan chair frame could not be taken as the measure for chief value comparison as it incorporated the nails. Furthermore, since plaintiff did not establish the cost of cutting and bending the rattan before assembly, it could not be held that the value of the rattan was more than that of the peel.

In another recent case, *John S. Connor, Inc.* v. *United States*, 54 Cust. Ct. 213, C.D. 2536, we held that wood was the component material of chief value, on the ground that it was not necessary to offer evidence of comparative costs to prove what material was in chief value when the most casual examination of the article showed that only one material could be. There, the article had 20 parts of wood, one tiny part of bamboo, a plastic tray, a few nails, and a piece of string. It appeared that counsel and the hearing judge assumed *sub silentio* that wood was the component material of chief value. However, counsel were warned that, in less obvious cases, the court could not determine component material of chief value without positive proof.

In the instant case, plaintiff has not established the cost of the components to the manufacturer at the time they were ready to be combined. Nevertheless, the evidence establishes that the wax and wick are not components of chief value, either separately or together. On the basis of the appraised values and the sample itself, it seems evident that the paint is of trifling value, and we so find. It follows that the article is in chief value of earthenware. The protest, therefore, is sus-

tained insofar as it claims that the merchandise is an entirety, dutiable at 10 cents per dozen pieces and 25 per centum ad valorem under paragraph 211, as modified, *supra*, as decorated articles in chief value of earthenware. Otherwise, the protest is overruled. Judgment will be entered accordingly.